MADISON McFARLAND, ET AL., v. JOHN McFARLAND, ET AL.

[Abstract Kentucky Law Reporter, Vol. 1—422.]

**Conveyance to Defraud Creditors—Evidence.**

In a suit to set aside a deed claimed to have been made as a mortgage to defraud the creditors of the grantor or mortgagor, where it is shown that the mortgagor after the mortgage is executed was always in complete control of it, and the personal property included in it is sold by him at pleasure, and the property is left with the mortgagor, who assumes as the agent of the mortgagee to manage, use and sell the mortgaged property at his discretion, it is strong evidence of fraud.

APPEAL FROM RUSSELL CIRCUIT COURT.

November 23, 1880.

OPINION BY JUDGE COFER:

That Long held the title to appellants' land as mere security for money lent is admitted by all parties, and that an absolute deed is under such circumstances treated in a court of equity as a mortgage does not admit of doubt. As it is not claimed, or if claimed is not shown, that Haynes occupies any more favorable attitude in respect to the land than Long occupied, the only questions we need to consider are whether the money paid to Long by Haynes was his (Haynes) money or was the money of Madison McFarland, and if the money belonged to Haynes whether he paid it to Long and took a bond for title to himself with the intention to assist McFarland in delaying his creditors.

McFarland and Haynes both testify that the money belonged to Haynes. Haynes was successfully impeached by evidence of bad character, and his testimony is inconsistent with his answer, and on some points of importance he is contradicted by Madison McFarland, and by the mortgage executed by the latter to him. For instance, he says in his answer that the mortgage was given to secure money advanced to McFarland, and he testifies that the mortgage was given to secure $1,040, money loaned "simultaneously with the execution of the mortgage," and that he would not have loaned the money without being secured. The mortgage was given to secure $867, and Madison McFarland swears that only a part of it was for money loaned at the time, and the residue was for pre-existing debts.

The court below does not appear to have passed upon the validity of this mortgage, but it was put in issue by the pleadings, and the

evidence in regard to it may be properly considered as bearing upon the question of fraudulent collusion.

So far as the testimony of Madison McFarland is concerned it is vague, inconsistent and unsatisfactory. The contract between Haynes and Long was made with his knowledge and consent, and he says that Haynes agreed to let him retain the farm as his tenant as long as he should live. Haynes, his brother-in-law, had previously purchased some of his land sold under execution, and may be assumed to have known that McFarland was indebted to the appellee, and must have known that the contract he was making with Long would obstruct the appellee in the collection of his debt, and in our opinion intended that it should do so. He must have known when sued that he had at most only a lien for any money he may have advanced to Long, but in his answer he asserts title and denies that McFarland has any interest whatever in the land. This, of itself, furnishes strong evidence that he was co-operating with McFarland to keep the land beyond the reach of creditors.

McFarland nowhere gives an intelligent account of the dealings between Haynes and himself. The farm and the personalty seem to have been as completely under the dominion of McFarland as if Haynes had no interest in them. McFarland used and sold the stock embraced in the mortgage at pleasure, and he and Haynes both testify that he had a right to do so. It is true they say he did so as agent for Haynes. But that the property is left with the mortgagor, who is constituted the agent of the mortgagee with power to manage, use and sell the mortgaged property at discretion, is strong evidence of fraud; and the same may be said of the agreement proved by Madison McFarland that he was to have a right to occupy the farm as Haynes' tenant as long as he chose. Haynes was nearly always absent, and no single act of ownership or control over land or personalty, except the act of renting the land, is proved. The evidence shows that McFarland could have sold the land to Miller for $3,000, and that it was worth more than that, but he would not sell it to Miller for that sum, preferring to allow Haynes to purchase it for $2,500, for the reason, no doubt, that he hoped that it would be not only thus placed beyond the reach of his creditors, but he might continue to occupy it under his agreement with Haynes.

We are therefore of the opinion that McFarland assented to the sale to Haynes to defraud his creditors, and that Haynes knew the fact and willingly became a party to the transaction in order to aid

McFarland in carrying out his design, and the judgment must be *affirmed.*

*J. F. Montgomery, William Lindsay, for appellants.*

*J. E. Hays, for appellees.*

[Cited, *Sheffield v. Day,* 28 Ky. L. 754, 90 S. W. 545.]